**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JAY KRAVITZ and MICHAEL STODDARD,**

                      **Plaintiffs,**

    vs.                                           **9:12-CV-973
                                                         (MAD/ATB)**

**BRIAN FISCHER,** *Commissioner of the New York State Department of Correctional Services*; **CALVIN RABSATT; C.O. PERRY; KLOSNER,** *Correctional Officer*; **NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES; JOHN DOES 1-4,** *Correctional Officers*; **JOHN DOE #1,** *Civilian Sub-Contractor*; **JOHN DOE #2,** *Civilian Sub-Contractor*; **and JANE DOE #1,** *Civilian Sub-Contractor*,

                      **Defendants.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**MAYNARD, O'CONNOR, SMITH &**        **ADAM T. MANDELL, ESQ.**
**CATALINOTTO, LLP**
Route 9W
P.O. Box 180
Saugerties, New York 12477
Attorneys for Plaintiffs

**OFFICE OF THE NEW YORK**            **CATHY Y. SHEEHAN, AAG**
**STATE ATTORNEY GENERAL**          **JUSTIN L. ENGEL, AAG**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Plaintiffs commenced this action on May 23, 2012, alleging that, while incarcerated at

Riverview Correctional Facility ("Riverview C.F."), they were denied the religious foods and

drink necessary to observe and practice their religion in violation of their First Amendment rights. *See* Dkt. No. 1. On April 15, 2014, Defendants requested an evidentiary hearing regarding Plaintiffs' alleged failure to exhaust their administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"). *See* Dkt. No. 43. The Court set a briefing schedule on the exhaustion issue and on November 14, 2014, the Court held an exhaustion hearing. *See* Dkt. Nos. 60 & 61.

Currently before the Court is Defendants' motion seeking dismissal of this action for Plaintiffs' failure to exhaust their administrative remedies.

## II. BACKGROUND

On June 15, 2012, Plaintiffs Jay Kravitz, Michael Stoddard and four other individuals commenced this action while in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 1. Plaintiffs allege several civil rights violations concerning their right to freely practice their religion while incarcerated at Riverview C.F. in April of 2011.

In their motion, Defendants contend that neither Plaintiff took the first step in grieving any of the allegations in their complaint. *See* Dkt. No. 60 at 4. Further, Defendants assert that neither Defendant filed an appeal to the Central Office Review Committee ("CORC"), the third step in the grievance process, regarding any of the claims in the complaint. *See id.*

At the exhaustion hearing, Plaintiff Kravitz testified that he filed a grievance regarding the events at issue in this suit. *See* Transcript of Exhaustion Hearing dated November 14, 2014 ("Tr.") at 8, 44. In response to the grievance, Plaintiff Kravitz claims that he was called into Deputy Frank's office to discuss the matter, but that he never received a formal written response.

2

*See id.* at 8, 44-45. Plaintiff Kravitz testified that, during the meeting, Deputy Superintendent Frank informed him and another inmate that there was no need to file a formal grievance and indicated that he would take care of the problem. *See id.* at 45. As such, Plaintiff Kravitz contends that he did not further pursue his grievance because of Deputy Superintendent Frank's representation to him.

Additionally, Plaintiff Kravitz testified at the hearing that he did not follow the formal grievance procedure regarding the events at issue in this case because he "was being threatened, physically and with things that we call set up." *Id.* at 50. Specifically, Plaintiff Kravitz testified that he "had one officer clearly threaten my safety" and indicated "that he was gonna beat me to death." *Id.* at 50-51. Although Plaintiff Kravitz did not file a grievance regarding the alleged threat that occurred in April of 2011, on September 28, 2011 he filed a grievance alleging that an Officer Bell threatened him for having previously filed a grievance against him. *See id.* at 7-8.

Plaintiff Stoddard also testified that he filed a formal grievance regarding the events at issue in this case. *See id.* at 57. Plaintiff Stoddard claimed that no action was ever taken on his grievance and, despite not receiving a response to the grievance, he did not file an appeal to the superintendent or the CORC. *See id.* According to Plaintiff Stoddard, he believed that Plaintiff Kravitz was acting on his behalf when he met with Deputy Superintendent Frank to discuss his grievance. *See id.* at 57-58.

Deputy Superintendent Frank also testified at the exhaustion hearing. *See id.* at 27-43. In April of 2011, Mr. Frank was the Deputy Superintendent of Programs at Riverview C.F. *See id.* at 28. Deputy Superintendent Frank testified that he would never tell an inmate not to file a grievance regarding a complaint the inmate may have. *See id.* at 29-30. Every week at the facility, the inmates are informed that, if they have a problem you have the right to file a

3

grievance. *See id.* at 30. However, they are also encouraged to attempt to resolve any issue they may be having "at the lowest level." *Id.* If, however, the inmate is unable to informally resolve the issue, they are told that they should file a grievance. *See id.*

Deputy Superintendent Frank also testified about his meeting with Plaintiff Kravitz and Juarez Barreto regarding the alleged events in April of 2011. *See id.* at 30-34. According to Deputy Superintendent Frank, the alleged conduct was investigated. *See id.* at 34. Again, Deputy Superintendent Frank testified that he did not tell Plaintiff Kravitz to not pursue his formal grievance regarding the events discussed at their meeting. *See id.* at 32-34.

## III. DISCUSSION

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal action. *See Booth*, 532 U.S. at 740-41. This "requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,'" and regardless of the subject matter of the claim. *See, e.g., Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (citation omitted). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *See id.* The failure to exhaust is an affirmative defense that defendants must raise. *See Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004) (citation omitted). As an affirmative defense, it is the defendants' burden to establish by a preponderance of the evidence that the plaintiff failed to meet the exhaustion requirements. *See Giano*, 380 F.3d at 675 (citation omitted).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court held that, for an inmate to exhaust his administrative remedies, he must complete the administrative review process in

4

accordance with the applicable state rules. *See id.* (citation omitted). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) (footnote omitted).

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). *See* 7 N.Y.C.R.R. § 701.5(a)(1) and (b). This grievance must be filed with the IGRC within twenty-one (21) calendar days of the alleged occurrence. *See id.* § 701.5(a). An inmate may appeal an adverse decision of the IGRC to the Superintendent of the Facility. *See id*. § 701.5(c). An inmate may appeal an adverse decision at the Superintendent's level to the Central Office Review Committee ("CORC"). *See id*. § 701.5(d). "To properly exhaust administrative remedies, an inmate must file an appeal with the CORC." *Torres v. Carry*, 672 F. Supp. 2d 338, 343 (S.D.N.Y. 2009) (citations omitted).

Even if an inmate fails to receive a response to his grievance filed with the IGRC, the inmate is still required to appeal the IGRC's nonresponse to his grievance to the superintendent and then CORC to complete the grievance process. *See Parker v. McIntyre*, No. 11-CV-865, 2014 WL 5432153, *3 (W.D.N.Y. Oct. 27, 2014) (citations omitted). In fact, the regulations governing the grievance procedure specifically provide that failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process. *See id.* (quotations omitted); *see also* 7 N.Y.C.R.R. § 701.6(g)(2). "Although some courts have found that an ignored grievance may render remedies 'unavailable,' such cases have involved circumstances where a

5

corrections officer proactively impeded an inmate's attempt to file a grievance, or where the inmate's repeated efforts to submit a grievance were rebuffed." *Id.* (citation omitted).

The Second Circuit has recognized three situations where a prisoner's failure to exhaust may be excused: "when (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such as way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted).

In the present matter, the evidence and testimony at the exhaustion hearing make clear that (1) administrative remedies were available to Plaintiffs; (2) Defendants preserved their affirmative defense by raising it in their answer; (3) Defendants engaged in no conduct that would estop them from asserting their affirmative defense; and (4) no special circumstances existed to justify Plaintiffs' failure to exhaust their administrative remedies. *See Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004).

Defendants submitted copies of the grievances Plaintiffs filed immediately prior and subsequent to the events in April of 2011. *See* Defendants' Exhaustion Hearing Exhibits "D-4E – D-9E." These exhibits clearly establish that Plaintiffs were aware of and utilized the grievance procedures on a regular basis.

Additionally, the Court finds incredible Plaintiffs' allegation, which was mentioned for the first time during the exhaustion hearing, that Deputy Superintendent Frank destroyed Plaintiffs' formal grievance. *See Atkins v. Menard*, No. 9:11-cv-366, 2012 WL 4026840, *3 (N.D.N.Y. Sept. 12, 2012) (rejecting as "patently incredible" the plaintiff's estoppel argument that was not

mentioned in the complaint and raised for the first time in his response to the motion for summary judgment) (citing *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005)). The testimony clearly established that such grievances were not filed with Deputy Superintendent Frank, but with the IGRC. Even if the Court were to credit Plaintiffs' assertion that they filed a formal grievance but that Deputy Superintendent Frank destroyed it, Plaintiffs were still required to appeal their grievance to the superintendent and then the CORC. *See* 7 N.Y.C.R.R. § 701.6(g)(2).

Moreover, the evidence and testimony clearly establishes that Defendants engaged in no conduct that would estop them from asserting their affirmative defense. Deputy Superintendent Frank testified that he never told Plaintiff Kravitz to not file a formal grievance regarding the events at issue. In fact, in subsequent grievances filed, Plaintiff Kravitz indicates that the grievance was drafted and filed at Deputy Superintendent Frank's request after meeting informally with Plaintiff Kravitz. *See, e.g.,* Exhibit "D-8E."

Further, the Court finds Plaintiff Kravitz's testimony at the hearing that he was threatened by a corrections officer to be incredible. Prior to the hearing, no mention had been made of this alleged threat. Moreover, the evidence shows that, at other times, Plaintiff Kravitz still filed grievances despite alleged threats by corrections officers. *See Atkins v. Menard*, No. 9:11-cv-366, 2012 WL 4026840, *3 (N.D.N.Y. Sept. 12, 2012) (rejecting as "patently incredible" the plaintiff's estoppel argument that was not mentioned in the complaint and raised for the first time in his response to the motion for summary judgment) (citing *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005)). Additionally, even if the Court were to credit Plaintiff Kravitz's allegations, none of the named Defendants are alleged to have threatened Plaintiff Kravitz. As such, Plaintiffs have not established that Defendants should be estopped from asserting this affirmative defense. *See Belile v. Griffin*, No. 9:11-CV-92, 2013 WL 1776086, *9 (N.D.N.Y. Feb. 12, 2013) (citations

7

omitted); *see also Atkins v. Menard*, No. 9:11-cv-366, 2012 WL 4026840, *3 (N.D.N.Y. Sept. 12, 2012) ("'Generally, a defendant in an action may not be estopped from asserting the affirmative defense of failure to exhaust administrative remedies based on the actions (or inactions) of other individuals'") (quotation and footnote omitted).

Finally, the Court finds that Plaintiffs have failed to establish that special circumstances justify their failure to exhaust. Plaintiffs contend that they were directed by Deputy Superintendent Frank to communicate with him directly regarding any grievances of a religious nature. *See* Dkt. No. 61 at 2. Although Deputy Superintendent Frank admits that he met with Plaintiff Kravitz and Juarez Barretto to discuss the alleged violations, this practice was in compliance with the regulations, which provide for informal resolution of grievances. *See* 7 N.Y.C.R.R. § 701.5(b). Further, Plaintiffs' contention is directly contradicted by the evidence in the record. The evidence demonstrates that Plaintiffs filed formal "grievances of a religious nature" both immediately prior to and after the alleged violations at issue in this case. *See, e.g.,* Exhibit "D-3E – D-8E."

Based on the foregoing, the Court grants Defendants' motion and dismisses this case for Plaintiffs' failure to exhaust their administrative remedies.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion seeking dismissal for Plaintiffs' failure to exhaust is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules; and the Court further

**ORDERS** that pro bono trial counsel, Adam T. Mandell, is relieved as pro bono counsel effective immediately.[1]

**IT IS SO ORDERED.**

Dated: December 3, 2014
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

---

[1] The Court expresses its thanks to pro bono counsel for his dedicated and highly professional assistance.